**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**


DEBORAH CRAWFORD,                       :

                  Plaintiff,

   -vs-

MICHAEL J. ASTRUE,
COMMISSIONER OF
SOCIAL SECURITY,

                  Defendant.       :

Case No. 3:07-cv-188

District Judge Walter Herbert Rice
Chief Magistrate Judge Michael R. Merz

**REPORT AND RECOMMENDATIONS**

        Plaintiff brought this action pursuant to 42 U.S.C. §405(g) and 42 U.S.C. §1381(c)(3) as it incorporates §405(g), for judicial review of the final decision of Defendant Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for Social Security benefits. The case is now before the Court for decision after briefing by the parties directed to the record as a whole.

        Judicial review of the Commissioner's decision is limited in scope by the statute which permits judicial review, 42 U.S.C. §405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings must be affirmed if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *citing, Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *Landsaw v.*

*Secretary of Health and Human Services*, 803 F.2d 211, 213 (6th Cir. 1986).  Substantial evidence is more than a mere scintilla, but only so much as would be required to prevent a directed verdict (now judgment as a matter of law), against the Commissioner if this case were being tried to a jury. *Foster v. Bowen*, 853 F.2d 483, 486 (6th Cir. 1988); *NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939).

In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hepner v. Mathews*, 574 F.2d 359 (6th Cir. 1978); *Houston v. Secretary of Health and Human Services*, 736 F.2d 365  (6th Cir. 1984); *Garner v. Heckler*, 745 F.2d 383 (6th Cir. 1984).  However, the Court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility.  *Garner, supra.*  If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the Court as a trier of fact would have arrived at a different conclusion.  *Elkins v. Secretary of Health and Human Services*, 658 F.2d  437, 439 (6th Cir. 1981).

To qualify for disability insurance benefits (SSD), a claimant must meet certain insured status requirements, be under age sixty-five, file an application for such benefits, and be under a disability as defined in the Social Security Act, 42 U.S.C. § 423. To establish disability, a claimant must prove that he or she suffers from a medically determinable physical or mental impairment that can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §423(d)(1)(A).  Secondly, these impairments must render the claimant unable to engage in the claimant's previous work or in any other substantial gainful employment which exists in the national economy.  42 U.S.C. §423(d)(2).

To qualify for supplemental security benefits (SSI), a claimant must file an

2

application and be an "eligible individual" as defined in the Social Security Act. 42 U.S.C. §1381a. With respect to the present case, eligibility is dependent upon disability, income, and other financial resources. 42 U.S.C. §1382(a). To establish disability, a claimant must show that the claimant is suffering from a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §1382c(a)(A). A claimant must also show that the impairment precludes performance of the claimant's former job or any other substantial gainful work which exists in the national economy in significant numbers. 42 U.S.C. §1382c(a)(3)(B). Regardless of the actual or alleged onset of disability, an SSI claimant is not entitled to SSI benefits prior to the date that the claimant files an SSI application. *See,* 20 C.F.R. §416.335.

The Commissioner has established a sequential evaluation process for disability determinations. 20 C.F.R. §404.1520 . First, if the claimant is currently engaged in substantial gainful activity, the claimant is found not disabled. Second, if the claimant is not presently engaged in substantial gainful activity, the Commissioner determines if the claimant has a severe impairment or impairments; if not, the claimant is found not disabled. Third, if the claimant has a severe impairment, it is compared with the Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1 (1990). If the impairment is listed or is medically equivalent to a listed impairment, the claimant is found disabled and benefits are awarded. 20 C.F.R. §404.1520(d). Fourth, if the claimant's impairments do not meet or equal a listed impairment, the Commissioner determines if the impairments prevent the claimant from returning to his regular previous employment; if not, the claimant is found not disabled. Fifth, if the claimant is unable to return to his regular previous employment, he has established a *prima facie* case of disability and the burden of proof shifts to the

Commissioner to show that there is work which exists in significant numbers in the national economy which the claimant can perform. *Bowen v. Yuckert,* 482 U.S. 137, 145, n.5 (1987).

Plaintiff filed applications for SSD and SSI on January 7, 2005, alleging disability from December 4, 2003, due to a back impairment, hysterectomy, numbness in her arms and legs, depression, a neck impairment, and pain in her right knee and right and left shoulders. (Tr. 95-97; 112, 138). Plaintiff's applications were denied initially and on reconsideration. (Tr, 69-71; 73-74). Administrative Law Judge Daniel Shell determined after hearing (Tr. 43-63), that Plaintiff is not disabled. (Tr. 13-34). The Appeals Council denied Plaintiff's request for review, (Tr. 5-7), and Judge Shell's decision became the Commissioner's final decision.

In determining that Plaintiff is not disabled, Judge Shell found that she has severe bilateral shoulder injuries and corrective surgeries, degenerative abnormality of the right knee and residual effects of surgery, vertebrogenic disorder of the lumber spine, and depressive disorder, but that she does not have an impairment or combination of impairments that meets or equals the Listings. (Tr. 32, finding 3). Judge Shell also found that Plaintiff has the residual functional capacity to perform a limited range of light work. *Id.,* finding 5. Judge Shell then used section 202.21 of the Grid as a framework for deciding and coupled with a vocational expert's (VE) testimony and determined that there is a significant number of jobs in the economy that Plaintiff is capable of performing. *Id.,* finding 10; Tr. 11, finding 11. Judge Shell concluded that Plaintiff is not disabled and therefore not entitled to benefits under the Act. (Tr. 34).

Plaintiff has a history of undergoing several surgical procedures during the period September, 1997, through December, 2003, to repair torn cartilage in both shoulders and her right knee. (Tr. 153; 205; 229; 233-36; 262-63).

Plaintiff began receiving treatment from orthopedic surgeon Dr. Paley in March, 2003, and continued to received treatment from him through at least March, 2005. (Tr. 241-59; 383). Initially, Dr. Paley identified Plaintiff's diagnoses as right knee sprain, right shoulder sprain, and left shoulder sprain. *Id.* Over time, Dr. Paley noted that Plaintiff had decreased and painful ranges of motion with moderate guarding in both of her upper extremities, tenderness, diminished rotator cuff strength, and normal neurological examination. *Id.* Dr. Paley performed surgery on Plaintiff's right shoulder in December, 2003, and he noted that she had a massive rotator cuff tear. *Id.*; Tr. 262-63. Post-operatively, Plaintiff participated in physical therapy and subsequently developed tendinitis in her shoulder. (Tr. 241-59). Dr. Paley noted that Plaintiff did not make much progress after the surgery and he reported in December, 2004, and January, 2005, that Plaintiff continued to have issues with her right shoulder, had a positive impingement maneuver, painful range of motion, and a slightly antalgic gait at start-up. *Id.* Dr. Paley opined that Plaintiff was capable of gainful employment, could either be retrained or go back to some kind of modified duty, and should avoid repetitive activity that is in the overhead planes. *Id.*

On April 24, 2004, examining psychologist Dr. Farrell reported that Plaintiff graduated from high school, attended business school for 1 ½ years, that her affect and mood were depressed, her facial expressions frequently became sad and downcast, and that there were no manifestations of anxiety other than nervous laughter. (Tr. 267-74). Dr. Farrell also reported that Plaintiff's test results revealed marked depression and a very low stress tolerance and suggested a low level of confusion. *Id.* Dr. Farrell noted that Plaintiff's diagnoses were depressive disorder NOS and rule out personality disorder; he assigned Plaintiff a GAF of 60. *Id.* Dr. Farrell opined that Plaintiff should receive mental health treatment and noted that she had done so with

psychologist Dr. Merchant. *Id.*

Plaintiff received mental health treatment from Dr. Merchant during the period March, 2004, through September, 2005. (Tr. 264-66; 328-37). On August 4, 2005, Dr. Merchant reported that Plaintiff displayed a depressed mood and affect and was of average intelligence, that her pain affected her ability to do many household chores, and that she did not participate in activities that she previously enjoyed. (Tr. 264-66). Dr. Merchant also reported that Plaintiff's symptoms of depression had persisted for about two years, she has had some improvement with antidepressant and antianxiety medications, she sometimes missed appointments due to forgetfulness, and that she had a reduced stress tolerance. *Id.*

During the time that Plaintiff was receiving treatment from Dr. Paley, he referred her to pain specialist Dr. Gupta. (Tr. 280-94). Dr. Gupta treated Plaintiff during the period October, 2004, through February, 2005.[1] *Id.* During that time, Dr. Gupta identified Plaintiff's diagnoses as right rotator cuff sprain (capsule), anterior glenoid labrum lesion, sprained right knee, and shoulder joint disorder. *Id.* Dr. Gupta also noted that Plaintiff was anxious and depressed and he recommended mental health treatment. *Id.*

In June, 2005, Dr. Merchant reported that Plaintiff's diagnosis was adjustment disorder with depressed mood, that she was unemployable, and that her inability to be employed would last 9-12 months. (Tr. 386-86).

In addition to receiving mental health treatment from Dr. Merchant, Plaintiff also saw psychiatrist Dr. Birdi on about three occasions during the period October, 2004, through June, 2005.

---

[1] It appears that Plaintiff did not see Dr. Gupta on every, if any, visit. Many of the clinical notes from Dr. Gupta's practice are electronically signed by "Jon Gillman PA-C" who documented "Plan disc. with Dr. Gupta." *See, e.g.,* Tr. 286, 290, 292, 294.

(Tr. 275-79).  During that time, Dr. Birdi noted that Plaintiff was alert, focused, cooperative, had normal psychomotor activities, had a sad and anxious mood, and normal affect, and that her diagnosis was adjustment disorder.  *Id.*

Plaintiff consulted with pain physician Dr. Smith in August, 2005, and Dr. Smith reported that Plaintiff complained of lumbar back pain radiating to her hip and thigh region and diffuse pain in the shoulder and neck regions.  (Tr. 388-93).  Dr. Smith also reported that Plaintiff's diagnoses were lumbar herniated disk, lumbar degenerative disk disease, and lumbar radiculitis.  *Id*.  During the period August through September, 2005, Plaintiff underwent a series of epidural steroid injections which Dr. Smith performed.  *Id.*  On September 7, 2005, Dr. Smith reported that he was treating Plaintiff with medication management and injection therapy, that her range of lumbar motion was decreased, her neurological examination was normal, and that her condition was good/stable with treatment. (Tr. 384-85).  Dr. Smith opined that Plaintiff was able to stand/walk for 4 hours in an 8-hour workday and for 15 minutes without interruption, sit for 1 hour in an 8-hour workday and for 15 minutes without interruption, lift up to 5 pounds occasionally, that she was unemployable and that she would remain unemployable for between 30 days and 9 months.  *Id.*

Plaintiff consulted with neurosurgeon Dr. Africk who reported on June 21, 2005, that Plaintiff had an antalgic gait, fairly good strength, decreased pin prick in the right L5 distribution, 2+ DTRs at the knees and 1+ at the ankles, and that she got pain with Patrick's maneuver bilaterally. (Tr. 396-97).  Dr. Africk also reported that Plaintiff's MRI was a poor quality scan but indicated degenerative disc disease at L4-5 with some bone spurring causing compression at the neuroforamen level bilaterally.  *Id.*  Dr. Africk identified Plaintiff's diagnosis as low back pain and leg discomfort.  *Id.*

Dr. Merchant reported on March 8, 2006, that she last saw Plaintiff in August, 2005, that her diagnosis was adjustment disorder with depressed mood, and that she was not able to perform many work-related mental activities. (Tr. 403-12). Dr. Merchant also reported that Plaintiff was being overwhelmed by her pain and its consequences, was distracted by her pain, and that she was moderately impaired in her activities of daily living and her abilities to maintain social functioning, and that she had moderate deficiencies in concentration. *Id.*

Dr. Paley reported on March 11, 2006, that due to her shoulder impairment, Plaintiff was able to lift up to 5 pounds occasionally and 2 ½ to 5 pounds frequently, her ability to stand/walk was probably not affected, her ability to sit was not affected and she could sit for 6-8 hours during an 8-hour day and for 1-2 hours without interruption, she should never climb, balance, stoop, kneel or crawl, and that her abilities to reach and push/pull were affected by her impairment. (Tr. 413-22). Dr. Paley also reported that Plaintiff had a poor outcome from her right shoulder surgery, that she was not able to perform either light or sedentary work, and that he anticipated that she would be absent from work more than three times a month. *Id*.

Plaintiff continued to receive treatment at Dr. Gupta's practice during the period March, 2005, through March, 2006.[2] (Tr. 423-43).

The record contains a copy of Plaintiff's treatment notes from Dr. Myton dated from about 1998, through March, 2006. (Tr. 445-64). Those notes indicate that Plaintiff received general medical care from Dr. Myton during that period. *Id.*

The record contains a copy of Plaintiff's treatment notes from Advanced Therapeutic

---

[2] As noted *supra*, it again appears that Plaintiff did not always, if ever, see Dr. Gupta, but rather saw "JenPA-C" or "Jon Gillman PA-C". *See, e.g.,* Tr. 428, 431, 435; 438.

Services dated October, 2005, through April, 2006. (Tr. 465-72). At the time Plaintiff was initially evaluated, it was noted that her mood was depressed, her affect was congruent, she was oriented, and that her speech was pressured. *Id.* It was also noted that Plaintiff was able to manage activities of daily living, could make reasonable life decisions, and that her diagnosis was depressive disorder NOS and anxiety NOS, and she was assigned a GAF of 51. *Id.*

Plaintiff alleges in her Statement of Errors that the Commissioner erred in his evaluation of treating physician Dr. Paley's and treating psychologist Dr. Merchant's opinions and by improperly evaluating her subjective complaints of pain and other symptoms. (Doc. 8). Plaintiff also alleges that, at the very least, this matter should be remanded pursuant to Sentence 6 for the purpose of considering an August, 2004, physical capacities evaluation which she submitted to Judge Shell but which was not included in the record. *Id.* Plaintiff has attached a copy of that evaluation to her Statement. *Id.,* attachment thereto.

In general, the opinions of treating physicians are entitled to controlling weight. *Cruse v. Commissioner of Social Security*, 502 F.3d 532, 540 (6th Cir. 2007), *citing, Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997) (citing 20 C.F.R. § 404.1527(d)(2) (1997)). In other words, greater deference is generally given to the opinions of treating physicians than to those of non-treating physicians. *Rogers v. Commissioner of Social Security,* 486 F.3d 234, 242, (6th Cir. 2007), citing *Wilson v. Commissioner of Social Security,* 378 F.3d 541, 544 (6th Cir. 2004). "A physician qualifies as a treating source if the claimant sees her 'with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition.'" *Cruse,* 502 F.3d at 540 (alteration in original) (quoting 20 C.F.R. § 404.1502). However, a treating physician's statement that a claimant is

disabled is of course not determinative of the ultimate issue. *Landsaw v. Secretary of Health and Human Services,* 803 F.2d 211, 213 (6th Cir. 1986). A treating physician's opinion is to be given controlling weight if it is well supported by medically acceptable clinical and laboratory techniques and it is not inconsistent with the other substantial evidence in the record. *Cutlip v. Secretary of Health and Human Services,* 25 F.3d 284 (6th Cir. 1994).

In rejecting Dr. Paley's opinion that Plaintiff was essentially disabled, Judge Shell determined that it was inconsistent with other opinions Dr. Paley had given, was not supported by the evidence, and was inconsistent with other evidence of record. (Tr. 24).

Although Dr. Paley reported that Plaintiff was not capable of performing either light or sedentary work, in contrast he opined in May, 2004, that he anticipated she would be able to return to work in about 2 months. (Tr. 247). Additionally, in December, 2004/January, 2005, Dr. Paley opined that Plaintiff was capable of performing gainful employment and that she should either be retrained or go back to some kind of modified duty avoiding repetitive activity in the overhead planes. (Tr. 241). Further, Dr. Paley opined that Plaintiff's ability to stand/walk was not affected by her impairments and that she was able to sit for up to 8 hours in an 8-hour workday. (Tr. 413-22).

In addition to the internal inconsistencies in Dr. Paley's opinions, his conclusino is not supported by his objective clinical findings. A review of his treatment record reveals that Dr. Paley reported few positive clinical findings. For example, Dr. Paley reported that, at worst, Plaintiff had mild spasms, tenderness, and guarding. In addition, he noted frequently that Plaintiff had good functional range of motion, satisfactory motor function, and that she was neurologically intact.

10

Finally, Dr. Paley's conclusion is inconsistent with the other evidence of record. For example, Dr. Gutpa's office records indicate that on May 23, 2005, Plaintiff discussed with the care provider the possibility of work reconditioning in an attempt to return Plaintiff to her former job or vocational rehabilitation to train her for another job. In addition, in January, 2006, Plaintiff reported to her care provider that she had been working out of her home as a silver and gold investor.[3] (Tr. 425). Even if Dr. Smith's opinion arguably supports Dr. Paley's opinion, Dr. Smith determined that Plaintiff's unemployability would last, at most, for nine months. That, of course, does not satisfy the durational requirements of the Act. Finally, Dr. Paley's opinion is inconsistent with the reviewing physicians' opinions. *See, e.g.,* Tr. 320-27.

Under these facts, the Commissioner had an adequate basis for rejecting Dr. Paley's opinion that Plaintiff was not able to perform either light or sedentary work.

Judge Shell also rejected treating psychologist Dr. Merchant's opinion. Essentially, Judge Shell found that Dr. Merchant opined that Plaintiff would be unemployable for less than 12 months. (Tr. 24). As noted above, that is indeed what Dr. Merchant reported. In addition, Dr. Merchant opined that "simple instructions in a relatively stress free environment would likely be manageable from a psychological standpoint." (Tr. 407). Further, it appears that in rendering her opinion that Plaintiff was disabled, Dr. Merchant took into consideration Plaintiff's alleged exertional limitations which, of course, are outside her area of expertise. *See, Id.* Dr. Merchant's opinion is inconsistent with Dr. Farrell's determination that Plaintiff's GAF was 60 indicating, at worst, a moderate impairment. Finally, Dr. Merchant's opinion is also inconsistent with the clinical findings which Dr. Birdi reported as well as with the reviewing mental health specialists' opinions.

---

[3] While the Court in not making a finding nor even suggesting that such activity was substantial gainful activity, the Court determines that such activity is inconsistent with a claim of total disability.

(Tr. 302-18).

Under these circumstances, the Commissioner had an adequate basis for rejecting Dr. Merchant's opinion.

Similarly, the Commissioner had an adequate basis for rejecting Plaintiff's subjective complaints and allegations.

It is, of course, for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant. *Rogers v. Commissioner of Social Security,* 486 F.3d 234, 247 (6th Cir. 2007)(citations omitted). An administrative law judge's credibility findings are entitled to considerable deference and should not be lightly discarded. *See, Villarreal v. Secretary of Health and Human Services,* 818 F.2d 461 (6th Cir. 1987); *Casey v. Secretary of Health and Human Services,* 987 F.2d 1230 (6th Cir. 1993). Determination of credibility related to subjective complaints rests with the ALJ and the ALJ's opportunity to observe the demeanor of the claimant is invaluable and should not be discarded lightly. *Gaffney v. Bowen,* 825 F.2d 98 (6th Cir. 1987).

However, the ALJ is not free to make credibility determinations based solely upon an "intangible or intuitive notion about an individual's credibility." *Rogers, supra* (citation omitted). Rather, such determination must find support in the record. *Id.* Whenever a claimant's complaints regarding symptoms or their intensity and persistence are not supported by objective medical evidence, the ALJ must make a determination of the credibility of the claimant in connection with his or her complaints "based on a consideration of the entire case record." *Id.* The entire case record includes any medical signs and lab findings, the claimant's own complaints of symptoms, any information provided by the treating physicians and others, as well as any other relevant evidence contained in the record. *Id.* Consistency between a claimant's symptom complaints and the other

evidence in the record tends to support the credibility of the claimant while inconsistency, although not necessarily defeating, should have the opposite effect. *Id.*

In finding that Plaintiff was not entirely credible, Judge Shell determined that her allegations were not supported by the evidence, were inconsistent with her activities, and were inconsistent with her treatment history. (Tr. 30). In addition, Judge Shell noted that Plaintiff did not have any side effects from medications. Finally, Judge Shell noted that Dr. Paley's and Dr. Merchant's opinions about Plaintiff's ability to engage in gainful employment were inconsistent with her allegations of total disability. This Court cannot say that the Commissioner erred in that regard.

First, Plaintiff reported to Dr. Farrell that she resided in her own home with her three minor children, that she drove regularly, performed household chores, managed her finances, and attended church occasionally. In addition, as noted above, the notes from Dr. Gupta's practice indicate that Plaintiff was working as a gold and silver investor. Dr. Myton noted in October, 2005, that Plaintiff was assisting with a cleaning business by performing secretarial duties at home. (Tr. 450). The records from Dr. Gupta's office indicate that Plaintiff never reported any side effects from medications and, as noted above, Dr. Paley and Dr. Merchant both essentially indicated that Plaintiff would be able to return to gainful employment. Finally, as noted above, the record contains few objective clinical findings which support Plaintiff's allegations of total disability. *Id.*

Plaintiff's final argument is that this matter should be remanded pursuant to sentence 6 for the consideration of additional evidence.

The remand provision of 42 U.S.C. §405(g) provides that the court may order a case remanded to the Commissioner for further consideration "only upon a showing that there is new

13

evidence which is material and there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. §405(g);  *see also, Casey v. Secretary of Health and Human Services,*  987 F.2d 1230, 1233 (6th Cir. 1993).

The court may review new evidence submitted after the Administrative Law Judge's decision for the limited purpose of determining the appropriateness of a remand to the Commissioner under sentence six of 42 U.S.C. §405(g).  *Wyatt v. Secretary of Health and Human Services,* 974 F.2d 680, 685 (6th Cir. 1992).  Such remand is appropriate, however, only if the court finds that the evidence is new and material and there is good cause for the failure to incorporate that evidence into the record of the prior proceeding.  *Sizemore v. Secretary of Health and Human Services,* 865 F.2d 709, 711 (6th Cir. 1988).

To establish materiality, the plaintiff must show, "a reasonable probability that the Commissioner would have reached a different disposition of the disability claim if presented with the new evidence."  *Sizemore,* 865 F.2d at 711 (citations omitted).  New evidence on an issue already fully considered by the Commissioner is cumulative and is not sufficient to warrant remand of the matter.  *Carroll v. Califano,* 619 F.2d 1157, 1162 (6th Cir. 1980).  Additional evidence is material only if it concerns the plaintiff's condition prior to the Commissioner's decision.  *Oliver v. Secretary of Health and Human Services,* 804 F.2d 964, 966 (6th Cir. 1986).  Evidence of a subsequent deterioration or change in the plaintiff's condition after the administrative hearing is deemed immaterial.  *Wyatt,* 974 F.2d at 685, *citing, Sizemore,* 865 F.2d at 712.

To show good cause, plaintiff must present some justification for the failure to have acquired and presented such evidence to the Commissioner for inclusion in the record during the hearing before the Administrative Law Judge.  *See, Willis v. Secretary of Health and Human*

14

*Services,* 727 F.2d 551 (6th Cir. 1984); *see also, Oliver, supra.* Additional evidence generated for the purpose of attempting to prove disability in contrast to evidence produced by continued medical treatment does not meet the good cause requirement of the Act. *Koulizos v. Secretary of Health and Human Services,* No. 85-1654 (6th Cir. Aug. 9, 1986) (table 802 F.2d 458).

As noted above, Plaintiff seeks remand for the purpose of considering the August, 2004, physical capacities evaluation which she submitted to the Commissioner but which the Commissioner failed to include in the record or consider in reaching his conclusion that Plaintiff is not disabled.

The Court will assume that Plaintiff has satisfied the "good cause" requirement for remand. Accordingly, the Court must determine whether the additional evidence is "material" within the meaning of the remand provisions of the Act.

The additional evidence consists of an August 27, 2004, functional capacities evaluation. A review of that evidence reveals that the evaluation was performed during a time when Plaintiff was being treated by Dr. Paley for her shoulder and knee complaints. As noted above, Dr. Paley opined that Plaintiff was capable of gainful employment. Additionally, the physical therapist who performed the evaluation relied in great part on Plaintiff's subjective complaints. Finally, assuming that the therapist had concluded that Plaintiff was not able to perform either light or sedentary work, that opinion would not be supported by the other evidence in the record.

Under these circumstances, it is not likely that the Commissioner would reach a different conclusion if he had considered the August, 2004, evaluation. Therefore, the report does not satisfy the "materiality" requirements of the Act.

Our duty on appeal is not to re-weigh the evidence, but to determine whether the decision below is supported by substantial evidence. *See, Raisor v. Schweiker,* 540 F.Supp. 686 (S.D.Ohio 1982). The evidence "must do more than create a suspicion of the existence of the fact to be established. ... [I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." *LeMaster v. Secretary of Health and Human Services,* 802 F.2d 839, 840 (6th Cir. 1986), *quoting, NLRB v. Columbian Enameling & Stamping Co.,* 306 U.S. 292, 300 (1939). The Commissioner's decision in this case is supported by such evidence.

It is therefore recommended that the Commissioner's decision that Plaintiff was not disabled and therefore not entitled to benefits under the Act be affirmed.

March 14, 2008.

*s/ Michael R. Merz*
Chief United States Magistrate Judge

NOTICE REGARDING OBJECTIONS

Pursuant to Fed.R.Civ.P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations. Pursuant to Fed.R.Civ.P. 6(e), this period is automatically extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by one of the methods of service listed in Fed.R.Civ.P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See, United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).